Jeff P. Prostok
State Bar No. 16352500
Emily S. Chou
State Bar No. 24006997
J. Blake Glatstein
State Bar No. 24123295
**VARTABEDIAN KATZ HESTER & HAYNES LLP**
301 Commerce Street, Suite 2200
Fort Worth, Texas 76102
Tel: (817) 214-4990
Fax: (817) 214-4988
jeff.prostok@vkhh.com
emily.chou@vkhh.com
blake.glatstein@vkhh.com

*COUNSEL FOR SECURED CREDITOR*
*BAY POINT CAPITAL PARTNERS II, LP*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 25-31249-mvl11 |
| ENNIS I-45 11 ACRE, LLC, | § | |
| | § | |
| Debtor. | § | (Chapter 11) |
| | § | |
| | § | |
| BAY POINT CAPITAL PARTNERS II, LP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Adversary No. 3:25-ap-03063-mvl |
| | § | |
| INTERBANK and REAL ESTATE HOLDINGS, LLC, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S MOTION FOR LEAVE TO AMEND ITS COMPLAINT

1

## **TABLE OF CONTENTS**

I.   Factual and Procedural Background...................................................................................... 9

II.  Arguments & Authorities..................................................................................................11

   A.   Legal Standard ..............................................................................................................11

   B.   Bay Point has good cause to untimely amend its pleading............................................ 13

   C.   Bay Point's amendments satisfy Rule 15....................................................................... 17

III.   Conclusion ....................................................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

Federal Cases

*Carson v. Polley*,
  689 F.2d 562 (5th Cir. 1982)........................................................................................ 18
*Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.*,
  690 F.2d 1157 (5th Cir. 1982)...................................................................................... 12
*Dozier v. Rowan Drilling Co.*,
  397 F. Supp.2d 837 (S.D. Tex. 2005) .......................................................................... 15
*Dussouy v. Gulf Coast Inv. Corp.*,
  660 F.2d 594 (5th Cir. 1981)........................................................................................ 12
*Feldman v. Stryker Corp.*,
  No. 3:18-CV-1416-S, 2020 WL 2507684 (N.D. Tex. May 15, 2020) .......................... 14
*Foman v. David*,
  371 U.S. 178 (1962) ..................................................................................................... 12
*Hawthorne Land Co. v. Occidental Chem. Corp.*,
  431 F.3d 221 (5th Cir. 2005)........................................................................................ 12
*Home Depot U.S.A., Inc. v. Nat'l Fire Ins. Co. of Hartford*,
  No. 3:06-CV-0073-D, 2007 WL 2592353 (N.D. Tex. Sept. 10, 2007)........................ 18
*In re Enron Corp. Secs., Derivative & ERISA Litig.*,
  610 F. Supp.2d 600 (S.D. Tex. 2009) .......................................................................... 18
*Jacobsen v. Osbourne*,
  133 F.3d 315 (5th Cir. 1998)........................................................................................ 12
*Kelly v. JP Morgan Chase Bank, N.A.*,
  No. 3:12-CV-3374-N-BK, 2013 WL 874858 (N.D. Tex. Mar. 11, 2013)...................... 6
*Kouzbari v. Health Acquis. Co., LLC*,
  No. 3:18-CV-0126-D, 2018 WL 6514766 (N.D. Tex. Dec. 11, 2018)......................... 14
*Martin's Herend Imports, Inc. v. Diamond & Gem Trading*,
  195 F.3d 765 (5th Cir. 1999)........................................................................................ 12
*Mayeaux v. La. Health Serv. and Indem. Co.*,
  376 F.3d 420 (5th Cir. 2004)........................................................................................ 18
*Maynard v. PayPal, Inc.*,
  No. 18-CV-0259-D, 2018 WL 5776268 (N.D. Tex. Nov. 2, 2018) ............................. 14
*OnAsset Intel., Inc. v. Freightweight Int'l (USA), Inc.*,
  No. 3:11-CV-3148-G, 2012 WL 5409660 (N.D. Tex. Nov. 6, 2012) .................... 11, 18
P. 7016(a); *Pogo Res., LLC v. St. Paul Fire & Marine Ins. Co.*,
  No. 3:19-CV-2682-BH, 2021 WL 1923301 (N.D. Tex. May 13, 2021)..............Passim
*Poly-America, Inc. v. Serrott Int'l Inc.*,
  No. 3:00-CV-1457-D, 2002 WL 206454 (N.D. Tex. Feb. 7, 2002).................... 20, 21
*Robles v. Archer W. Contr'rs, LLC*,
  No. 3:14-CV-1306-M, 2015 WL 4979020 (N.D. Tex. Aug. 19, 2015) ....................... 13
*S&W Enters., LLC v. S. Tr. Bank of Ala., NA*,
  315 F.3d 533 (5th Cir. 2003)............................................................................. 12, 13, 14
*Sapp v. Mem'l Hermann Healthcare Sys.*,
  406 F. App'x 866 (5th Cir. 2010).......................................................................... 12, 13

*Settlement Cap. Corp., Inc. v. Pagan*,
 649 F. Supp. 2d 545 (N.D. Tex. 2009) .................................................................... 13
*Stripling v. Jordan Prod. Co.*,
 234 F.3d 863 (5th Cir. 2000) ................................................................................ 20
*Williams v. Santander Consumer USA Holdings Inc.*,
 No. 3:21-CV-3176-D-BH, 2022 WL 2440814 (N.D. Tex. July 5, 2022) ........................... 11, 12
*Wimm v. Jack Eckerd Corp.*,
 3 F.3d 137 (5th Cir. 1993) ................................................................................... 12

State Cases

Ex. 5, Excerpts of,
 Tucker 30 ........................................................................................................ 8
*Whoa USA, Inc. v. Regan Props., LLC*,
 No. 05-13-01412-CV, 2014 WL 6967852 (Tex. App.—Dallas Nov. 26, 2014) ..................... 6

State Statutes

Tex. Civ. Prac. & Rem. Code Ann. § 12.002(a) ............................................................ 8
Tex. Prop. Code §§ 12.001(b)(1), 13.001(a) ............................................................... 6

Federal Rules

*Fed. R. Bank. P. 7016(a)* .................................................................................... 12
Fed. R. Bankr. P. 15 .......................................................................................... 11
*Fed. R. Bankr. P. 7015* ..................................................................................... 11
Fed. R. Bankr. P. 7030 ........................................................................................ 5
*Fed. R. Civ. P. 15* .......................................................................................... 11
*Fed. R. Civ. P. 16(b)* ................................................................................... 12, 14
Fed. R. Civ. P. 30(b)(6) ............................................................................... 5, 10, 11
Rule 15(a) ............................................................................................... 11, 12

4

Plaintiff Bay Point Capital Partners II, LP ("Bay Point") files this Motion for Leave ("Motion") to Amend Its Complaint (ECF No. 17) to add new factual allegations learned during the last few weeks of discovery and two new causes of action based on those facts.[1] In the above-styled adversary proceeding ("Adversary"), Defendants InterBank ("IB") and Real Estate Holdings, LLC ("REH"), (collectively, "Defendants" or "InterBank") designated four individuals to testify as their corporate representative under Fed. R. Civ. P. 30(b)(6), applicable to the Adversary by Fed. R. Bankr. P. 7030, on February 26, March 5, March 13, and March 16, 2026. During these depositions, the individuals, Pam Underwood, Jeff Frazier, Terry Smith and Josh Tucker, testifying as one voice for InterBank contradicted each other often. Through these depositions, Bay Point learned InterBank failed, inter alia, to adequately respond to Bay Point's discovery requests. Even more importantly, Bay Point also learned for the first time that the deed of trust Debtor Ennis I-45 11 Acre LLC ("Debtor"), in the above-styled chapter 11 bankruptcy proceeding ("Bankruptcy Case"), conveyed to InterBank on July 18, 2022 (the "Deed of Trust"), was **not** signed, acknowledged, and sworn to by its signatory, Debtor's principal Bill Moist, before ███████████ the notary public, an officer authorized to take acknowledgements or oaths, that certified the Deed of Trust.



Ex. 2, Excerpts of Underwood 30(b)(6) and Reb. Expert Dep. 106:6–14 (Feb. 26, 2026).

---

[1] The proposed Second Amended Complaint is attached as Ex. 1.

Under Texas Property Code, this makes the Deed of Trust unrecordable and void as to a creditor. It therefore does not impart constructive notice of a lien to third parties. Tex. Prop. Code §§ 12.001(b)(1), 13.001(a); *Kelly v. JPMorgan Chase Bank, N.A.*, No. 3:12-CV-3374-N-BK, 2013 WL 874863 (N.D. Tex. Jan. 11, 2013), *R. & R. adopted sub nom. Kelly v. JP Morgan Chase Bank, N.A.*, No. 3:12-CV-3374-N-BK, 2013 WL 874858 (N.D. Tex. Mar. 11, 2013) ("[A] defect in the acknowledgment of an instrument conveying real property renders the documents unrecordable."); *Whoa USA, Inc. v. Regan Props., LLC*, No. 05-13-01412-CV, 2014 WL 6967852, at *7 (Tex. App.—Dallas Nov. 26, 2014) (citations omitted) ("[A] document filed for record without statutory authorization does not impart constructive notice to third parties.").

InterBank's corporate representative finished its testimony on March 16, 2026, the discovery deadline. Every testifying individual on behalf of InterBank either corroborated the fact that the Deed of Trust was signed by Bill Moist outside of █████████ presence or stated that were unaware of specific person's presence when the Deed of Trust was signed.



Ex. 3, Excerpts of Frazier 30(b)(6) Dep. 59:8–60:11 (March 5, 2026).



Ex. 4, Excerpts of Smith 30(b)(6) and Reb. Expert Dep. 35:4–11 (March 13, 2026).



*Id.*, at 22:23–24:4.



Ex. 5, Excerpts of Tucker 30(b)(6) and Reb. Expert Dep. (Draft Tr.), at 26 (March 16, 2026).

Accordingly, Bay Point determined it has two new causes of action for (1) a declaratory judgment

that Bay Point is the first lienholder under Texas law and (2) violation of the Texas Fraudulent

Lien Statute, Tex. Civ. Prac. & Rem. Code Ann. § 12.002(a), based on facts unknown to Bay Point

until at least February 26, 2026, and without certainty until March 16, 2026, months after the

November 21, 2025 deadline to amend its pleadings, *see* ECF No. 19.

Bay Point attempted by phone at 5:35 PM and via email to meet and confer about filing

this Motion on March 19, 2026, about 72 hours after InterBank finished its testimony.

| | |
|---|---|
| From: | Blake Glatstein |
| To: | Dennis Roossien; Brandon Stendara; Miller, Brie |
| Cc: | Emily Chou; Mary Taylor Stanberry |
| Subject: | Meet and Confer - Motion for Leave / Motion to Expedite |
| Date: | Thursday, March 19, 2026 8:34:21 PM |
| Attachments: | image001.png |

Hi Dennis,

Bay Point plans to file a motion for leave to amend its complaint and add new causes of action based on new facts discovered during deposition testimony and recently produced discovery. Bay Point will add at least two causes of action seeking (1) a declaratory judgment that Bay Point is the first lienholder of the Debtor's property because the conveyance of the deed of trust to InterBank was void to Bay Point since it was filed without statutory authorization, and (2) damages for InterBank's violation of the Texas Fraudulent Lien Statute. Bay Point may add a third claim for fraud based on the promise and use of the condemnation proceeds given testimony related to Bay Point's pecuniary loss from that conduct that was not available earlier in the case. Does InterBank oppose Bay Point's motion for leave to amend its complaint?

*See* Ex. 6, Mar. 19, 2026 Eml. from B. Glatstein to D. Roossien. Bay Point also attempted to follow

up by phone and email with Mr. Roossien, InterBank's lead counsel, on March 18 and 19, 2026,

to continue to meet and confer on issues related to its motion to compel (ECF No. 23) pending

before the Court. Bay Point never received a response.[2]

Given that the summary judgment deadline is March 23, 2026, and Bay Point does not want to delay this Adversary, this Motion followed.

## I.      Factual and Procedural Background

On June 13, 2025, Bay Point filed its Original Complaint (ECF No. 1) in the Adversary after learning, inter alia, about InterBank's fraudulent conduct to induce Bay Point to provide Debtor with a mezzanine loan to enrich InterBank's impaired collateral to improve InterBank's likelihood of recovering its loan, knowing Bay Point and other creditors would lose their investments. On July 10, 2025, InterBank filed a motion to dismiss (ECF No. 7) the Adversary. On October 30, 2025, the Court granted in part and denied in part InterBank's motion to dismiss (ECF No. 14). In its ruling, the Court allowed Bay Point to amend its Original Complaint by November 21, 2025. Bay Point timely filed its Amended Complaint (ECF No. 17).

On November 24, 2025, the Court entered a Scheduling Order with a discovery deadline of March 16, 2026, and a dispositive and Daubert motions deadline of March 23, 2026. During the 112 days of discovery, the Parties propounded discovery, received discovery responses and objections, had rolling productions of about 8,500 documents from all interested parties, and had nine depositions. The Parties appeared to be actively engaged in participating in discovery to meet the March 16 discovery deadline. But Bay Point later realized that was not the case.

On November 21, 2025, Bay Point propounded 46 requests for production. A few days later, on November 26, 2025, InterBank produced a 1,007-page PDF document. But this document without metadata consisted almost entirely of documents InterBank already attached to pleadings in the Bankruptcy Case or this Adversary. On or around December 5, 2025, Bay Point's counsel

---

[2] Bay Point did receive a response from Brie Miller, also counsel for InterBank, regarding a metadata issue on a document produced as an attempt to resolve an outstanding issue in Bay Point's motion to compel.

complained via telephone to InterBank's counsel that the single PDF document lacked metadata.

On December 15, 2025, InterBank produced another single document—this time a 396-page PDF

document without metadata. This document consisted entirely of documents Bay Point and

InterBank both received from Debtor's production. InterBank's actual rolling production with

individual documents with some metadata started on January 27, 2026, with a production of 2,303

documents. Upon further review, many of these 2,303 were exact or near duplicates of each other.

InterBank continued with three more productions: (1) one document on March 2, 2026; (2) three

documents on March 4, 2026; and (3) one document on March 19, 2026.

Bay Point's rolling document production also started on January 27, 2026, and ended on

February 4, 2026. Bay Point's productions consisted of 2,032 documents some of which were also

produced to Bay Point from other parties.

With little discovery produced by the parties by mid-January, the parties had to start

planning depositions. The parties propounded depositions around the same time.[3] Due to what

appeared to be reasonable scheduling conflicts and travel plans, InterBank's four witnesses were

deposed after Bay Point's four fact witnesses and in last four weeks of discovery. Indeed, Terry

Smith and Josh Tucker, two of the four individuals designated to testify as InterBank's corporate

representative under Fed. R. Civ. P. 30(b)(6) and two of the three individuals disclosed as

InterBank's non-retained rebuttal expert witnesses, were deposed on the last two business days of

discovery.

InterBank designated Pam Underwood, Jeff Frazier, Terry Smith, and Josh Tucker as

---

[3] Bay Point first asked for deposition dates for InterBank's corporate representative and Jeff Frazier on January 22, 2026. Bay Point could not propound depositions earlier because it lacked substantive document production from InterBank that it hoped to review before depositions started. After a chance to review InterBank's January 27, 2026 production, Bay Point provided a notice of deposition topics for InterBank's corporate representative under Fed. R. Civ. P. 30(b)(6) on February 19, 2026.

individuals to testify as InterBank's corporate representative under Fed. R. Civ. P. 30(b)(6).

InterBank also designated Pam Underwood, Terry Smith, and Josh Tucker as non-retained rebuttal

expert witnesses to rebut the opinions and testimony of Bay Point's retained expert Robert Unell.

Pam Underwood's deposition was February 26. Jeff Frazier's deposition was March 5. Terry

Smith's deposition was March 13. Josh Tucker's depositions was March 16, 2026.

For the first time, during these depositions, Bay Point learned how InterBank's loans to

Debtor originated. Specifically, Bay Point learned that ████████████████



████ Based on these newly learned facts, Bay Point determined it has two additional causes of

action against InterBank. And this Motion followed.

## II.   Arguments & Authorities

### A.  Legal Standard

***To amend or supplement pleadings in an adversary proceeding, Fed. R. Civ. P. 15***

***("Rule 15") applies through Fed. R. Bankr. P. 7015***. Rule 15 instructs the court to "freely give

leave" to a party to amend its pleading "when justice so requires." *OnAsset Intel., Inc. v.*

*Freightweight Int'l (USA), Inc.*, No. 3:11-CV-3148-G, 2012 WL 5409660, at *1 (N.D. Tex. Nov.

6, 2012) (citation omitted); *see* Fed. R. Bankr. P. 15. Rule 15(a) evinces a bias in favor of

amendment because it requires that leave be granted "freely." *See Williams v. Santander Consumer*

*USA Holdings Inc.*, No. 3:21-CV-3176-D-BH, 2022 WL 2440814, at *1 (N.D. Tex. July 5, 2022)

(citing *Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1162 (5th Cir. 1982)). Therefore, "[a] court's discretion to grant leave is severely limited by the bias of Rule 15(a) favoring amendment." *Id.* (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)). "Leave to amend should not be denied unless there is a substantial reason to do so." *Id.* (citing *Jacobsen v. Osbourne*, 133 F.3d 315, 318 (5th Cir. 1998)). The court lacks a substantial reason to deny leave unless the proposed amendment would cause undue delay or prejudice to the non-movant, it is motivated by bad faith or dilatory motives, there have been repeated failures to cure deficiencies with prior amendment, or the amendment is futile. *Id.* (first citing *Foman v. David*, 371 U.S. 178, 182 (1962); then citing *Martin's Herend Imports, Inc. v. Diamond & Gem Trading*, 195 F.3d 765, 770 (5th Cir. 1999); and then citing *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993)).

***Fed. R. Civ. P. 16(b), through Fed. R. Bank. P. 7016(a), governs the amendment of pleadings where, as in this case, the deadline in a scheduling order has expired***. Fed. R. Bank. P. 7016(a); *Pogo Res., LLC v. St. Paul Fire & Marine Ins. Co.*, No. 3:19-CV-2682-BH, 2021 WL 1923301, at *5 (N.D. Tex. May 13, 2021) (first citing *Hawthorne Land Co. v. Occidental Chem. Corp.*, 431 F.3d 221, 227 (5th Cir. 2005); and then citing *S&W Enters., LLC v. S. Tr. Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003)). "When leave to amend is sought after the deadline, the movant has the burden to show 'good cause' to modify the scheduling order and amend its pleadings." *Pogo Res.*, 2021 WL 1923301, at *5 (citing *Sapp v. Mem'l Hermann Healthcare Sys.*, 406 F. App'x 866, 869 (5th Cir. 2010)). When determining whether the movant has shown "good cause" in the context of an untimely motion to amend pleadings, courts consider: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) the potential prejudice in allowing the amendment; and (4) the availability of a

12

continuance to cure such prejudice. *Id.* (citations omitted). "The court considers the four factors holistically and does not mechanically count the number of factors that favor each side." *Id.* (citation omitted). "Courts will deny a motion for leave where the delay is unnecessary, or little to no explanation is offered for an extended delay in amending the pleading." *Id.* (citations omitted).

**B. Bay Point has good cause to untimely amend its pleading.**

      i.      <u>Bay Point has a good explanation for its failure to timely amend.</u>

The first factor requires an explanation for the movant's failure to timely amend its pleading. *Id.* (citing S&W Enters., 315 F.3d at 536). Courts have found sufficient explanation in cases involving developments in applicable law and when new facts become known through depositions and document production while the case is pending. *Id.* (first citing *Robles v. Archer W. Contr'rs, LLC*, No. 3:14-CV-1306-M, 2015 WL 4979020, at *3 (N.D. Tex. Aug. 19, 2015); and then citing *Settlement Cap. Corp., Inc. v. Pagan*, 649 F. Supp. 2d 545, 566–67 (N.D. Tex. 2009)).

Here, Bay Point did not delay pursuing the two new causes of action. At the earliest, Bay Point was put on notice of the underlying facts of these causes of action on February 26 during Underwood's deposition. However, based on InterBank's unusual corporate representative designations of multiple individuals testifying on the same topics,[4] Bay Point needed to complete its depositions of InterBank's corporate representative before Bay Point could in good faith ask the Court to amend its Complaint. Therefore, Bay Point could not have amended its Complaint before the November 21, 2025 deadline based on facts not known to Bay Point until February 26 and confirmed on March 16, 2026. Accordingly, Bay Point has a good explanation of why it failed to add these causes of action into its timely First Amended Complaint, and this factor weighs in favor of granting this Motion.

---

[4] *See* a true and accurate copy of InterBank's designations of its corporate representative, attached as Exhibit 7.

ii. Bay Point's amendments are important.

Under the second factor, the plaintiff must identify the importance of its untimely amendment. *Pogo Res.*, 2021 WL 1923301, at *6 (citing *S&W Enters.*, 315 F.3d at 536). "Courts deem amendments to be important where they potentially provide additional grounds for a party to recover, or directly affect a party's prospects of ultimate recovery." *Id.* (cleaned up) (first quoting *Feldman v. Stryker Corp.*, No. 3:18-CV-1416-S, 2020 WL 2507684, at *2 (N.D. Tex. May 15, 2020) (quoting *Kouzbari v. Health Acquis. Co., LLC*, No. 3:18-CV-0126-D, 2018 WL 6514766, at *3 (N.D. Tex. Dec. 11, 2018)); and then citing *Maynard v. PayPal, Inc.*, No. 18-CV-0259-D, 2018 WL 5776268, at *4 (N.D. Tex. Nov. 2, 2018)).

Here, Bay Point's amendments are important because Bay Point's proposed Second Amended Complaint adds two new causes of action for (1) a declaratory judgment that Bay Point is the first lienholder of Debtor's Property under Texas law and (2) a violation of Texas Fraudulent Lien Statute. *See generally* Ex. 1. These amendments potentially provide additional grounds for Bay Point's recovery and directly affect Bay Point's prospects of ultimately recovery. Accordingly, Bay Point amendments in its proposed Second Amended Complaint are important, and this factor weighs in favor of granting this Motion.

iii. InterBank is not prejudiced by Bay Point's amendment and any prejudice can be cured by a continuance.

"The third and fourth factors require consideration of the potential prejudice that [a plaintiff's] amendment will cause [d]efendant[s] and the availability of a continuance to cure any such prejudice." *Pogo Res.*, 2021 WL 1923301, at *7 (citing *S &W Enters.*, 315 F.3d at 536). "Although courts have not directly defined prejudice in the Rule 16(b) context, 'prejudice' is generally defined as '[d]amage or detriment to one's legal rights or claims.'" *Id.* (quoting Black's Law Dictionary (10th ed. 2014)). "Courts have found prejudice to a defendant when amendments

14

would delay trial, restart a case at an earlier stage, or otherwise unfairly limit a [party's] ability to present their case at trial." *Id.* (citations omitted). Prejudice does not exist when an "amendment does not change the nature of the suit." *See id.* (citing *Dozier v. Rowan Drilling Co.*, 397 F. Supp.2d 837, 855 (S.D. Tex. 2005)).

Here, Bay Point's amendments in its proposed Second Amended Complaint would not delay trial, restart the case at an earlier stage, or otherwise unfairly limit InterBank's ability to present its case. Bay Point propounded written discovery from InterBank related to InterBank's loans to Debtor and their originations including:

- All due diligence files, credit memoranda, underwriting materials, risk rating or watch-list reports, and covenant compliance tracking related to Debtor's loans and construction project

- All documents and communications reflecting Defendants' knowledge or analysis of compliance with the Construction Loan Agreement

- All Defendants' internal policies, procedures, and training materials applicable to construction loan administration

- All Defendants' files concerning any investigation, audit, exception report, or remediation relating to the Debtor's loans or accounts, including any findings, committee minutes, exception approvals, regulatory communications, or remedial actions taken

- All documents and communications relating to any consideration of notices of default under the Construction Loan Agreement

- All Defendants' correspondence with regulators, auditors, or insurers concerning the Debtor's loans or accounts, including any fidelity bond, bankers blanket bond, or professional liability notifications or claims related to the Debtor's relationship, loan administration, or proceeds handling

- All communications and documents concerning Defendants' knowledge of and response to any alleged manipulation or concealment of defaults in 2022–2024 for the Debtor relationship.

*See generally* Ex. 8, Bay Point's Requests for Production to InterBank. Bay Point also propounded deposition testimony from InterBank related to InterBank's loans to Debtor and their originations

15

including:

- The negotiation, drafting, and execution of the ICA, including all representations and warranties made therein, Defendants' knowledge of the accuracy of such representations and warranties at the time of execution, and any events or circumstances that existed on or before August 22, 2023 that would constitute an Event of Default or Material Adverse Event under the Senior Loan Documents.

- Defendants' underwriting, due diligence, and approval process for Debtor's current loan, including all credit memoranda, risk assessments, and analyses performed regarding the Debtor, the Project, and the Debtor's compliance with the Construction Loan Agreement covenants.

- Defendants' knowledge and monitoring of the Debtor's compliance with the IBCLA.

- All Events of Default or potential Events of Default under the Senior Loan Documents existing at any time prior to August 22, 2023, including Defendants' knowledge thereof, any waivers granted, and any internal communications regarding whether to declare defaults or send notices of default.

- All Material Adverse Events as defined in the IBCLA that occurred at any time prior to August 22, 2023, including Defendants' knowledge thereof and any determinations made regarding disclosure to Bay Point.

- All communications between Defendants and the Debtor or its agents regarding Debtor's construction project and current loan.

- The role of Gage Roland in connection with the Debtor's loans and accounts at InterBank, including his responsibilities, knowledge, and involvement in the matters at issue in this proceeding.

- The information reviewed, discussed, and communicated by and between the Defendants' loan committees regarding or related to the Debtor, including information shared by and between loan committee members, Defendants' employees and the Debtor.

- The discovery responses made by and documents produced by Defendants in this Adversary.

- Any investigation, audit, exception report, or internal review conducted by Defendants relating to the Debtor's loans or accounts or any other matters at issue in this Adversary.

*See* generally Ex. 7. Accordingly, any information or documents related to Bay Point's proposed amendments should have already been produced by InterBank. Therefore, no further discovery is

16

necessary, and no other deadlines have passed at the time of this Motion.

Additionally, InterBank knew of the underlying facts of Bay Point's proposed new causes of action in its Second Amended Complaint. Therefore, InterBank was aware of these potential causes of action since at least October 2022 according to InterBank's testimony. Therefore, InterBank cannot be surprised by Bay Point's proposed amendments. Accordingly, InterBank is not prejudiced by Bay Point's proposed amendments, and the third factor weighs in favor of granting this Motion.

Lastly, trial is not set for months. Bay Point also has a pending motion to continue the Scheduling Order deadlines due to InterBank's discovery shenanigans. *See* ECF No. 23. Even if the Court denies that motion, and the summary judgment deadline approaches this week, a new summary judgment deadline could be set for the new causes of action through a continuance. Generally, any prejudice InterBank even could allege at this procedural posture based Bay Point's proposed amendments could be cured by a continuance. Accordingly, the fourth factor also weight in favor of granting this Motion.

Considering the four factors as a whole, Bay Point has met its burden to establish good cause to modify the scheduling order deadlines and permit an untimely amendment to its Complaint. Analysis of its motion for leave under the more liberal Rule 15(a) is therefore appropriate.

### C. Bay Point's amendments satisfy Rule 15.

i.  <u>There is no undue delay, bad faith, or dilatory motive in this amendment.</u>

"A litigant's failure to assert a claim as soon as he could have is properly a factor to be considered in deciding whether to grant leave to amend. Merely because a claim was not presented as promptly as possible, however, does not vest the district court with authority to punish the litigant." *Id.* (quoting *Carson v. Polley*, 689 F.2d 562, 584 (5th Cir. 1982)). "Delay alone is an

insufficient basis to deny leave to amend, and delay must be '*undue*, i.e., it must prejudice the nonmoving party or impos[e] unwarranted burdens on the court.'" *Id.* (quoting *In re Enron Corp. Secs., Derivative & ERISA Litig.*, 610 F. Supp.2d 600, 653 (S.D. Tex. 2009) (quoting *Mayeaux v. La. Health Serv. and Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004)) (emphasis original)).

"When a court considers a motion for leave to add a new theory to the complaint, '[a]s a general rule, the risk of substantial prejudice increases with the passage of time.'" *Id.* (quoting *Home Depot U.S.A., Inc. v. Nat'l Fire Ins. Co. of Hartford*, No. 3:06-CV-0073-D, 2007 WL 2592353, at *2 (N.D. Tex. Sept. 10, 2007)). But a party's "failure to pursue [a] claim from the onset of litigation does not constitute sufficient undue delay to support a denial of leave to amend." *OnAsset Intel.*, 2012 WL 5409660, at *2. Indeed, "merely because a claim was not presented as promptly as possible does not vest the court with authority to punish the litigant." *Id.* (cleaned up) (quoting *Carson v. Polley*, 689 F.2d 562, 584 (5th Cir.1982)). "Rather, the usual case in which 'undue delay' supports a court's denial of leave to amend is where a party waits until the eve of trial to assert a new claim." *Id.* (cases collected).

As explained above, Bay Point did not delay pursuing the two new causes of action. At the earliest, Bay Point was put on notice of the underlying facts of these causes of action on February 26 during Underwood's deposition. However, based on InterBank's unusual corporate representative designations of multiple individuals testifying on the same topics, Bay Point needed to complete its depositions of InterBank's corporate representative before Bay Point could in good faith ask the Court to amend its Complaint. Accordingly, this factor weighs in favor of granting this Motion.

ii.     Bay Point has not repeatedly failed to cure pleading deficiencies.

Bay Point's Original Complaint (ECF No. 1) stated a claim for relief, at least partially,

18

overcoming InterBank's motion to dismiss. Bay Point amended its Complain one time. *See* ECF No. 17. In that one amendment, Bay Point cured any earlier pleading deficiency and did not face a second motion to dismiss. Accordingly, Bay Point has not repeatedly failed to cure pleading deficiencies, and this factor weighs in favor of granting this Motion.

    iii.    <u>InterBank is not unfairly prejudiced by Bay Point's amendments and any alleged prejudice could be cured by a continuance.</u>

As explained above, Bay Point's amendments in its proposed Second Amended Complaint would not delay trial, restart the case at an earlier stage, or otherwise unfairly limit InterBank's ability to present its case. Bay Point propounded written and deposition discovery from InterBank related to InterBank's loans to Debtor and their originations. Accordingly, any information or documents related to Bay Point's proposed amendments should have already been produced by InterBank. Therefore, no further discovery is necessary, and no other deadlines have passed at the time of this Motion.

Additionally, InterBank knew of the underlying facts of Bay Point's proposed new causes of action in its Second Amended Complaint. Therefore, InterBank was aware of these potential causes of action since at least October 2022 according to InterBank's testimony. Therefore, InterBank cannot be surprised by Bay Point's proposed amendments. Accordingly, InterBank is not prejudiced by Bay Point's proposed amendments, and the third factor weighs in favor of granting this Motion.

Lastly, trial is not set for months. Bay Point also has a pending motion to continue the Scheduling Order deadlines due to InterBank's discovery shenanigans. *See* ECF No. 23. Even if the Court denies that motion, and the summary judgment deadline approaches this week, a new summary judgment deadline could be set for the new causes of action through a continuance. Generally, any prejudice InterBank even could allege at this procedural posture based Bay Point's

19

proposed amendments could be cured by a continuance. Accordingly, the fourth factor also weight

in favor of granting this Motion.

      iv.     <u>Bay Point's amendments are not futile.</u>

Futility under Rule 15 means that "'the amended complaint would fail to state a claim upon

which relief could be granted,' so courts must apply the same standard as under Rule 12(b)(6)."

*Pogo Res.*, 2021 WL 1923301, at \*9 (quoting *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th

Cir. 2000)). "Leave to amend does not need to be granted when the amended complaint would not

defeat a motion to dismiss." *Id.* "The issue of futility, however, is better addressed 'in the context

of a Rule 12(b)(6) or Rule 56 motion, where the procedural safeguards are surer.'" *Id.* (citations

omitted). "This Court's 'almost unvarying practice when futility is raised in response to a motion

for leave to amend is to address the merits of the claim or defense in the context of a Rule 12(b)(6)

or Rule 56 motion where the procedural safeguards are surer.'" *Id.* (cleaned up) (quoting *Poly-*

*America, Inc. v. Serrott Int'l Inc.*, No. 3:00-CV-1457-D, 2002 WL 206454, at \*4–5 (N.D. Tex. Feb.

7, 2002)).

Here, Bay Point's amendments state a claim for relief. Bay Point alleges newly learned

facts that support two new alleged causes of action that relate to InterBank and are under the

jurisdiction of this Court. Accordingly, this factor weighs in favor of granting this Motion.

Having considered the relevant Rule 15 factors, there is no "substantial reason" to deny

Bay Point's Motion. *See id.*, at \*10 (citations omitted). Accordingly, the Court should grant this

Motion.

### III.    <u>Conclusion</u>

For the foregoing reasons, Bay Point respectfully asks the Court to grant this Motion and

allow Bay Point to file its proposed Second Amended Complaint, Ex. 1. Bay Point further requests

and all relief that the Court believes it is so justly entitled.


Date: March 22, 2026

Respectfully submitted,

By: */s/ J. Blake Glatstein*
Jeff P. Prostok
State Bar No. 16352500
Emily S. Chou
State Bar No. 24006997
J. Blake Glatstein
State Bar No. 24123295
**VARTABEDIAN KATZ HESTER & HAYNES LLP**
301 Commerce Street, Suite 2200
Fort Worth, Texas 76102
Tel: (817) 214-4990
Fax: (817) 214-4988
jeff.prostok@vkhh.com
emily.chou@vkhh.com
blake.glatstein@vkhh.com

***COUNSEL FOR BAY POINT
CAPITAL PARTNERS II, LP***


### CERTIFICATE OF CONFERENCE

I certify that on March 19, 2026, Bay Point attempted to conference in good faith by telephone and by email with Defendants' counsel. Bay Point received no response. Accordingly, Bay Point assumes Defendants oppose this Motion. Bay Point is willing to confer with Defendants regarding this Motion. Therefore, Bay Point reserves its right to amend this Certificate of Conference if the parties confer.

By: */s/ J. Blake Glatstein*
J. Blake Glatstein


### CERTIFICATE OF SERVICE

I certify that on March 22, 2026, a true and correct copy of the foregoing document was served by email and filed in the Court's ECF system in accordance with the applicable rules of civil procedure to the Defendants' counsel of record.

By: */s/ J. Blake Glatstein*
J. Blake Glatstein


21