Jeff P. Prostok
State Bar No. 16352500
Emily S. Chou
State Bar No. 24006997
J. Blake Glatstein
State Bar No. 24123295
VARTABEDIAN HESTER & HAYNES LLP
301 Commerce Street, Suite 3635
Fort Worth, Texas 76102
Tel: (817) 214-4990
Fax: (817) 214-4988
jeff.prostok@vhh.law
emily.chou@vhh.law
blake.glatstein@vhh.law

*COUNSEL FOR SECURED CREDITOR*
*BAY POINT CAPITAL PARTNERS II, LP*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 25-31249-mvl11 |
| ENNIS I-45 11 ACRE, LLC, | § | |
| | § | |
| Debtor. | § | (Chapter 11) |
| | § | |
| | § | |
| BAY POINT CAPITAL PARTNERS II, LP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Adversary No. 3:25-ap-03063-mvl |
| vs. | § | |
| | § | |
| INTERBANK and REAL ESTATE HOLDINGS, LLC, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION TO DEFENDANTS**

1

Pursuant to Federal Rule of Civil Procedure 34 and Federal Bankruptcy Rule of Procedure 7034, Plaintiff Bay Point Capital Partners II, LP ("Bay Point") serves the following Requests for Production on Defendants InterBank and Real Estate Holdings, LLC ("REH," and together with InterBank, "Defendants") pursuant to the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure.

Date: November 21, 2025

Respectfully submitted,

By: */s/ J. Blake Glatstein*
Jeff P. Prostok
State Bar No. 16352500
Emily S. Chou
State Bar No. 24006997
J. Blake Glatstein
State Bar No. 24123295
**VARTABEDIAN HESTER & HAYNES LLP**
301 Commerce Street, Suite 3635
Fort Worth, Texas 76102
Tel: (817) 214-4990
Fax: (817) 214-4988
jeff.prostok@vhh.law
emily.chou@vhh.law
blake.glatstein@vhh.law

***COUNSEL FOR BAY POINT CAPITAL PARTNERS II, LP***

## CERTIFICATE OF SERVICE

I certify that on November 21, 2025, a true and correct copy of the foregoing document was served via email on counsel of record for Defendants.

By: */s/ J. Blake Glatstein*
J. Blake Glatstein

### DEFINITIONS

For purposes of these Requests, the following terms are defined below.

1.      "Debtor" means Ennis I-45 11 Acre, LLC and any of its principals, officers, or agents.

2.      "Bay Point" includes any of its principals, officers, or agents.

3.      "InterBank" includes any of its principals, officers, or agents.

4.      "REH" includes any of its principals, officers, or agents.

5.      "Project" means the Ennis RV Resort & Storage project.

6.      "ICA" means the August 22, 2023 Intercreditor and Subordination Agreement.

7.      "IBCLA" means Defendant's Construction Loan Agreement incorporated by reference in the ICA.

8.      "Condemnation Proceeds Letter" means the August 14, 2024 letter from Defendants concerning receipt and disposition of TxDOT condemnation proceeds.

9.      "DOT Proceeds" means proceeds from the Texas Department of Transportation condemnation or sale referenced in the Complaint.

10.     "JLL Appraisal" means the March 2023 appraisal by Jones Lang LaSalle.

11.     "CBRE Appraisal" means the January 2022 CBRE appraisal.

12.     "Price Drop" means Price Drop, LLC.

13.     "Dry Built" includes Dry Built General Contractor Inc. and any assumed names.

14.     "Frazier" means Jeff Frazier.

15.     "Relating to," "relevant to," "referring to," or "reflecting" means any and all information which refers to, pertains to, reflects upon, or is in any way logically or factually connected with or may afford any information regarding the matters referenced.

16.     "Including" shall mean including but not limited to.

17.     "And" and "or" shall be construed as conjunctive or disjunctive to ensure the provision of additional information or more complete answers, and to avoid the questions herein being considered ambiguous, inaccurate, or confusing. In other words, "and" shall include "or," and "or" also shall include "and."

3

18. "Person" or "persons" includes natural persons, firms, partnerships, associations, organizations, joint ventures, corporations, and other entities.

19. "Documents" refer to any and all writings and all other written, printed, computer-generated, records, and graphic/pictorial matter of any kind, however stored, produced, or reproduced, and all identical and non-identical copies and prior drafts within Defendants' knowledge, possession, custody, or control. The term "documents" includes, without limiting the generality of the foregoing, all originals, copies and drafts of all memoranda, reports, letters, telegrams, electronic mail, other electronic correspondence, and any other communications or information recorded in any form or medium; notes, minutes, and transcripts of conferences, meetings, and telephone or other communications; transparencies, view-graphs, foils, slides, handouts, and multimedia presentations; contracts and other agreements; statements, ledgers, and other records of financial matters or commercial transactions; notebooks and diaries; plans and specifications; manuals; studies; publications; photographs; diagrams, graphs, charts, and other drawings; photocopies, microfilm, and other copies or reproductions; audio and video recordings; tape, disk (including all forms of magnetic, magneto-optical, and optical disks), and other electronic recordings; financial models, statistical models and other data compilations; and computer printouts. In all cases where originals and identical or non-identical copies and drafts are not available, "documents" means copies of such documents and any portions thereof. The term includes all drafts of a document; the original document (or a copy thereof if the original is not available); and all copies that differ in any way from the original (including as to any notations, underlining, or other markings). The term also includes information stored in, or accessible through, computer or other information retrieval systems, together with instructions and all other materials necessary to use or interpret such data compilations.

20. "Communications" refer to any transfer of information, ideas, opinions, or thoughts by any means (whether oral or written), at any time or place, under any circumstances. Communications include statements, dialogues, colloquialisms, discussions, conversations, agreements, expressions of any kind, correspondence, e-mails, text messages, facsimiles, memoranda, letters, notes, face-to-face conversations, telephone conversations, social media messages or posts, instant messages, electronic chat messages, newsletters, announcements, and press releases.

## **<u>INSTRUCTIONS</u>**

1. Objections and responses to these Requests shall be made in writing and served within 30 days of service of these Requests. Defendants must a) specify the part of the request that is objectionable, and respond and allow inspection of materials responsive to the remainder of the request; and b) state whether any responsive materials are being withheld on the basis of an objection.

2. Unless otherwise specified, the relevant period is January 1, 2021, to the present. These requests are continuing in nature, and responsive documents should be produced as they become available.

3.  Point requests production of ESI in native format with metadata and production load files, and transactional data (e.g., ledger exports, wire logs) in usable native formats in compliance with Federal Rule of Civil Procedure 34(a)(1).

4.  These Requests call for the production of all responsive documents in Defendants' possession, custody, or control or for which Defendants have the legal right to obtain the documents requested. If Defendants' response is that Defendants do not have the legal right to obtain the requested documents, or the documents are not within Defendants' possession or custody, Defendants' response should identify to the best of Defendants' knowledge who has the possession, custody, or control and the location of the documents.

5.  If any responsive document or thing has been lost, destroyed, or otherwise is no longer in Defendants' possession, custody, or control, Defendants' response should include for each such Document or thing:

    a.  The author, addressees, and any other recipients of the Document or thing;
    b.  The date of the Document or thing (or state that it is not dated);
    c.  A description in reasonable detail of the Document or thing;
    d.  The reason the document or thing is no longer in Defendants' possession, custody, or control; and
    e.  If it was destroyed or otherwise disposed of, the reason it was destroyed or otherwise disposed of; and
    f.  The full name and contact information for any person(s) who may have knowledge or information relating to the document or thing.

6.  Documents are to be produced as kept in the usual course of business with any identifying labels, file markings, or similar identifying features or shall be organized and labeled to correspond to the categories requested herein. If there are no documents in response to a particular Request or if Defendants withhold any responsive documents or categories of documents based on any objections, Defendants shall state so in writing.

7.  If any document is withheld in whole or in part for any reason including, without limitation, a claim of privilege or work product, Defendants must provide a privilege log.

8.  If certain Document Requests are duplicative of previous requests for which documents have already been produced, Defendants do not need to produce those documents again, but are requested to identify those documents and respond that such documents are among those already produced.

9.  Examples of responsive items set out in any Request should not be construed to limit the scope of the Request.

10. These Requests are continuing to the fullest extent allowed by Federal Rule of Civil Procedure 26(e) so as to request a) Defendants' response to these Requests within 30 days; and b) prompt supplementation of Defendants' when appropriate or necessary.

**REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1:** All versions, drafts, redlines, attachments, transmittal emails, and execution copies of the ICA, including all internal Defendants' communications concerning the ICA's representations and warranties, default representations, and "Material Adverse Event" provisions, including those identified in the Senior Loan Documents incorporated by reference by pages 2, 8, 11, and 12 of the ICA and identified in Exhibit B (entitled "Senior Loan Documents") like the IBCLA.

**Response**:

**REQUEST FOR PRODUCTION NO. 2:** All due diligence files, credit memoranda, underwriting materials, risk rating or watch-list reports, and covenant compliance tracking relating to the Debtor and the Project at any time prior to and through execution of the ICA, including internal analyses of whether any defaults or Material Adverse Events existed, including those identified in the Senior Loan Documents incorporated by reference by pages 2, 8, 11, and 12 of the ICA and identified in Exhibit B (entitled "Senior Loan Documents") like the IBCLA.

**Response**:

**REQUEST FOR PRODUCTION NO. 3:** All documents and communications reflecting Defendants' knowledge or analysis of compliance with the IBCLA as of July–August 2023, including but not limited to: bank account location requirements, LTV requirements, Approved Budget compliance, work stoppage provisions, financial reporting requirements, and any default or potential default.

**Response**:

**REQUEST FOR PRODUCTION NO. 4:** All drafts, versions, redlines, communications, and final copies of the Condemnation Proceeds Letter, including all documents and communications concerning the intended receipt, control, segregation, and disposition of the DOT Proceeds.

**Response**:

**REQUEST FOR PRODUCTION NO. 5:** All documents, account statements, wire confirmations, transfer memos, deposit slips, withdrawal slips, ledger entries, account opening documents, signature cards, and authorizations for each Debtor account at InterBank, including but not limited to account numbers 1755739350, 1755816294, 1755816329, and 1755879357.

**Response**:

**REQUEST FOR PRODUCTION NO. 6:** All documents and communications related to the verification of the authority of any signatories for each Debtor account, excluding signatories that are employed by Defendants.

**Response**:

**REQUEST FOR PRODUCTION NO. 7:** Complete monthly statements for each Debtor account identified in Request 5, including any missing statements for July, August, and September 2023 for account 1755816294, July 2023 for account 1755816329, and September 2024 for any Debtor interest reserve or retainage accounts.

**Response**:

**REQUEST FOR PRODUCTION NO. 8:** All Applications for Advance (as defined in the IBCLA) and supporting documentation, certifications, approvals, internal checklists, and disbursement records for the Debtor's loan(s) from Defendants, including the August 18, 2023 "Final Draw" or $586,247.75 entry recorded as "Interbank - to record advance."

**Response**:

**REQUEST FOR PRODUCTION NO. 9:** All documents and communications relating to the creation, funding, administration, and disposition of any "interest reserve" or "retainage" accounts or subaccounts for the Debtor at Defendants, including account opening forms, authorizations, internal approvals, balances, transfers, sweep instructions, and internal policies or procedures governing such accounts.

**Response**:

**REQUEST FOR PRODUCTION NO. 10:** All documents and communications reflecting the July 31, 2023 letter or statement by Defendants concerning pledged "Interest Reserves" of approximately $260,993 and "Retainage" of approximately $325,254, including drafts, internal approvals, and any support for the stated figures.

**Response**:

**REQUEST FOR PRODUCTION NO. 11:** All documents and communications concerning the August 18, 2023 transfers or deposits of approximately $586,247.75, $260,993.25, or $325,254 into any Debtor interest reserve or retainage accounts, including deposit slips, transfer instructions, general ledger entries, and any reconciliation or accounting of those funds.

**Response**:

**REQUEST FOR PRODUCTION NO. 12:** All documents and communications concerning the handling of the DOT Proceeds, including receipt into any Defendants' account, any segregation or designation of the funds, any transfers to "replenish retainage," any wires or transfers to third parties (including Price Drop), any transfers to the Debtor for "operations," and any application to principal, interest, or fees.

7

**Response**:

**REQUEST FOR PRODUCTION NO. 13:**  All communications between Defendants and the Debtor (or its principals, agents, or counsel) concerning the DOT Proceeds and/or the Condemnation Proceeds Letter, including any instructions received or given regarding lien releases, subcontractor payoffs, or Price Drop.

**Response**:

**REQUEST FOR PRODUCTION NO. 14:** All documents and communications concerning any payment, transfer, or wire to Price Drop, including internal Defendants' approvals, wire requests, memos, compliance or KYC files, documentation obtained on Price Drop's ownership, relationship to the Debtor or Dry Built, and any accounting or reconcilement of the $588,917 amount.

**Response**:

**REQUEST FOR PRODUCTION NO. 15:** All documents and communications concerning any purported liens, lien waivers, or lien releases used to justify or support transfers from the DOT Proceeds, including lien status reports, title company correspondence, title commitments or updates, and any internal assessment of the legitimacy or necessity of purported lien payoffs.

**Response**:

**REQUEST FOR PRODUCTION NO. 16:** All documents and communications concerning the March 24, 2024 or other Dry Built unconditional lien waivers or releases, including Defendants' evaluation of whether any additional sums were due to Dry Built or its subcontractors after such waivers and before disposition of the DOT Proceeds.

**Response**:

**REQUEST FOR PRODUCTION NO. 17:**  All communications between Defendants and any title company or escrow agent regarding the August 22, 2024 TxDOT closing, including closing statements, escrow agreements, instructions, disbursement ledgers, and any communications regarding liens or releases.

**Response**:

**REQUEST FOR PRODUCTION NO. 18:**   All documents, communications, engagement letters, invoices, work files, drafts, and deliverables relating to the JLL Appraisal, including communications with JLL personnel, any scope instructions, the stated "internal business decision" purpose, any internal review, and any comparison to or reconciliation with the CBRE Appraisal.

**Response**:

8

**REQUEST FOR PRODUCTION NO. 19:** All documents, communications, engagement letters, review reports, and internal analyses concerning the CBRE Appraisal, including the Parrish Property Services appraisal review, and any Defendants' comparison of CBRE and JLL valuations.

**Response**:

**REQUEST FOR PRODUCTION NO. 20:** All communications between Defendants (including Frazier) and JLL's capital markets, brokerage, or debt placement teams concerning the Debtor, the Project, the JLL Appraisal, the CBRE Appraisal, Bay Point's potential loan, or the intercreditor process.

**Response**:

**REQUEST FOR PRODUCTION NO. 21:** All intercreditor agreement drafts exchanged with Bay Point or its counsel and all internal Defendants' communications concerning the status of defaults, covenant breaches, construction delays, cost overruns, missing or misapplied funds, and whether Defendants believed their ICA representations were accurate.

**Response**:

**REQUEST FOR PRODUCTION NO. 22:** All documents and communications concerning Defendants' knowledge, authorization, or approval of adding Joe Grisel as a signer or granting him account access or one-party authority on any Debtor InterBank account, including any LLC resolutions, KYC documentation, signature cards, internal approvals, and risk/compliance sign-offs.

**Response**:

**REQUEST FOR PRODUCTION NO. 23:** All Defendants' internal policies, procedures, and training materials applicable to: construction loan administration, retainage administration, interest reserve administration, appraisal procurement and review, intercreditor agreements, eminent domain proceeds handling, third-party wire payees, and customer account authority.

**Response**:

**REQUEST FOR PRODUCTION NO. 24:** All Defendants' files concerning any investigation, audit, exception report, or remediation relating to the Debtor's loans or accounts, including any findings, committee minutes, exception approvals, regulatory communications, or remedial actions taken.

**Response**:

9

**REQUEST FOR PRODUCTION NO. 25:**  All documents and communications relating to any consideration of notices of default, reservations of rights, waivers, forbearances, or declarations of default under the IBCLA prior to and through the ICA execution and Bay Point's funding.

**Response**:

**REQUEST FOR PRODUCTION NO. 26:**  All communications between Defendants and Debtor, Dry Built, Price Drop, Joe Grisel, Bill Moist, John McGaugh, Terry Richie, or Alanna Olicker concerning the purported need to pay subcontractors or obtain lien releases after Bay Point funded its loan to the Debtor.

**Response**:

**REQUEST FOR PRODUCTION NO. 27:**  All communications between Defendants and Debtor, Dry Built, Price Drop, Joe Grisel, Bill Moist, John McGaugh, Terry Richie, or Alanna Olicker concerning the CBRE Appraisal.

**Response**:

All communications between Defendants and Debtor, Dry Built, Price Drop, Joe Grisel, Bill Moist, John McGaugh, Terry Richie, or Alanna Olicker concerning the JLL Appraisal.

**Response**:

**REQUEST FOR PRODUCTION NO. 28:**  All communications between Defendants and Debtor, Dry Built, Price Drop, Joe Grisel, Bill Moist, John McGaugh, Terry Richie, or Alanna Olicker concerning the retention, hiring, and use of JLL's capital markets, brokerage, or debt placement teams.

**Response**:

**REQUEST FOR PRODUCTION NO. 29:**  All communications between Defendants and Debtor, Dry Built, Price Drop, Joe Grisel, Bill Moist, John McGaugh, Terry Richie, or Alanna Olicker concerning cost overages, missing payments, missing money, or any other potential or alleged misuse or mismanagement of the Debtor's funds.

**Response**:

**REQUEST FOR PRODUCTION NO. 30:**  All Defendants' organizational documents, servicing agreements, policies, and communications describing the relationship between InterBank and Real Estate Holdings, LLC (REH), including which entity holds, services, or directs actions on the Debtor's loans, collateral, and proceeds.

**Response**:

**REQUEST FOR PRODUCTION NO. 31:**  All credit committee minutes, memoranda, emails, and decisioning documents concerning the August 18, 2023 "Final Draw," the creation or funding of interest reserve/retainage accounts, and any advances or transfers made in July–September 2023 or August–October 2024.

**Response**:

**REQUEST FOR PRODUCTION NO. 32:**  All communications with Bay Point or its representatives regarding the Debtor's loan performance, construction status, budget compliance, lien status, and any assurances or statements concerning absence of defaults or Material Adverse Events prior to Bay Point's funding.

**Response**:

**REQUEST FOR PRODUCTION NO. 33:**  All communications with Bay Point or its representatives regarding the DOT Proceeds, the Condemnation Proceeds Letter, intended disposition of the proceeds, and any subsequent explanation or accounting provided to Bay Point for transfers made to the Debtor, Dry Built, or Price Drop.

**Response**:

**REQUEST FOR PRODUCTION NO. 34:**  All documents reflecting Defendants' internal accounting, reconcilements, and general ledger entries for receipt, holding, segregation, and disposition of the DOT Proceeds, including any journal entries describing "replenish retainage," transfers between Debtor accounts, and payments to third parties.

**Response**:

**REQUEST FOR PRODUCTION NO. 35:**  All communications and documents concerning any missing monthly statements for Debtor accounts during 2023–2024, including reasons for non-production and any records of statements being suppressed, corrected, or reissued.

**Response**:

**REQUEST FOR PRODUCTION NO. 36:**  All Defendants' correspondence with regulators, auditors, or insurers concerning the Debtor's loans or accounts, including any fidelity bond, bankers blanket bond, or professional liability notifications or claims related to the Debtor relationship, loan administration, or proceeds handling.

**Response**:

**REQUEST FOR PRODUCTION NO. 37:**  All communications and documents concerning Defendants' knowledge of and response to any alleged manipulation or

irregularities in appraiser engagement, late charge reversals, funding of interest from loan proceeds, or concealment of defaults in 2022–2024 for the Debtor relationship.

**Response**:

**REQUEST FOR PRODUCTION NO. 38:** All documents and communications concerning any transfers in September 2024 out of the Debtor interest reserve account(s), including internal emails noting the discrepancy between August 30, 2024 ending balances and October 1, 2024 opening balances.

**Response**:

**REQUEST FOR PRODUCTION NO. 39:** All Defendants' records and communications regarding any opening of a new Debtor "Operations Account" on or about August 26, 2024 (including account number 1755879357), the business rationale, usage, and any related transfers associated with the DOT Proceeds.

**Response**:

**REQUEST FOR PRODUCTION NO. 40:** All documents and communications reflecting Defendants' understanding and calculation of the Debtor's LTV and compliance with the IBCLA LTV covenant from July 2022 through the ICA date, including any analyses showing breach of the LTV covenant.

**Response**:

**REQUEST FOR PRODUCTION NO. 41:** All documents and communications reflecting Defendants' knowledge and analysis of construction delays, work stoppages, and any related default triggers under the IBCLA, and Defendants' decisions whether to declare or waive defaults.

**Response**:

**REQUEST FOR PRODUCTION NO. 42:** All documents and communications regarding Defendants' knowledge that the Debtor held accounts at financial institutions other than Defendants, Defendants' monitoring of the IBCLA bank account requirements, and any waivers or exceptions granted.

**Response**:

**REQUEST FOR PRODUCTION NO. 43:** All documents sufficient to show any internal or external communications by Frazier concerning the Debtor's interest reserve, retainage, DOT Proceeds, payments to Price Drop, or lien releases, including any spreadsheets titled "Reconcilement of $588,917" or similar.

**Response**:

12

**REQUEST FOR PRODUCTION NO. 44:**   All documents and communications concerning any demand by Defendants to Dry Built, Price Drop, or others for backup, invoices, lien releases, or proof of payment associated with the $588,917 transfer, and any responses, releases, or proof provided.

**Response**:


**REQUEST FOR PRODUCTION NO. 45:**   All communications between Defendants and Debtor regarding adding, removing, or changing authorized signers to any of Debtor's InterBank accounts, including any communications concerning granting authority to non-members or non-managers.

**Response**: